(54 App. Div. 262.)

PEOPLE ex rel. COMSTOCK v. MORRISON et al.

(Supreme Court, Appellate Division, First Department. November 9, 1900.)

MANDAMUS—CONDEMNATION PROCEEDINGS—COMMITTEE'S REPORT—ENFORCING SIGNATURE.

Where the committee in condemnation proceedings had substantially agreed on the amounts to be awarded, and the report had been signed by two members, and the third refused to sign because a motion for a rehearing had been filed, mandamus will not lie to compel such member to sign, since the signing of such a report is a judicial act, and the committee have complete authority over their report until filed or placed beyond their control.

Appeal from special term, New York county.

Application by the people, on the relation of William T. Comstock, for a writ of mandamus to compel George A. Morrison, Jr., to sign a report of the commissioners in condemnation proceedings. From an order directing a writ to issue, the Manhattan Railway Company appeals. Order reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Wm. H. Godden, for appellant.
James C. Bushby, for respondent.

PATTERSON, J. This is an appeal from an order directing the issuance of a peremptory writ of mandamus to compel George A. Morrison, Jr., one of three commissioners in a condemnation proceeding, to sign a report of such commissioners. The order was made on the application of the relator, Comstock, who was the owner of certain premises situate on the Bowery, in the city of New York, and in front of which the elevated railway of the Manhattan Railway Company is built and is in operation. That company sought to condemn certain easements appurtenant to the relator's property, and, after proceedings duly had in accordance with law, three commissioners, namely, William Mitchell, Edwin J. Curry, and George A. Morrison, Jr., were appointed by the supreme court to fix the value of the easements to be taken. After several hearings were had before the commissioners, at which evidence was taken, they seem to have substantially agreed upon the amounts that should be awarded to the relator; and Commissioner Morrison wrote a letter to one of the parties interested, in which he stated that "the awards of the commissioners in the above-entitled condemnation proceedings are as follows" (naming them). That letter appears to have been sent on the 26th day of June, 1900. On the next day the attorney for the Manhattan Railway Company served notice upon the commissioners of an application for a rehearing and reargument, and for a reduction of the awards of fee and rental damage referred to in the letter of Commissioner Morrison, dated June 26, 1900, and that further application would be made for the reopening of the trial and rehearing, and a reconsideration of the awards. Meantime Commissioner Curry had announced his intention of sailing for Europe on the 27th of June, whereupon one of the attorneys for the property owners prepared a report for the commissioners, and obtained the signature of Mr. Curry thereto late on the evening of June 26th, and on the morning of June 27th that report was presented to Commissioner Mitchell, who signed the same and delivered it to Mr. Bushby, the attorney referred to. Upon the report being presented to Mr. Morrison, he declined to sign it, lest his doing so might interfere with the right of the Manhattan Railway Company to a rehearing. Mr. Curry having gone to Europe, the two other commissioners met in July, 1900, and counsel were heard upon the application for a reargument; and after that hearing Mr. Mitchell voted to deny the motion for a rehearing, and Mr. Morrison voted to grant the same. The official notification of the action of the commissioners on the motion for a reargument was made in writing by George A. Morrison, Jr., chairman, to Mr. Bushby, on the 25th of July, 1900. On the same day Mr. Morrison wrote upon the report which had been signed in June by Mr. Mitchell and Mr. Curry the following: "I decline to sign the above report, for the reasons hereto annexed." And then he added a memorandum, in which he placed his refusal to sign the report upon the opinion that the railroad company had a substantial right to a rehearing and reargument before the report

was signed and filed, and that such reargument and rehearing should be before the full board of three commissioners, and that commissioners and referees have jurisdiction at any and all times before the actual signing and filing of their reports to hear and determine any applications made in regard thereto, and to make any corrections or changes in said reports which to them may seem proper; that the signing of the report by him, in view of the tie vote of the commissioners, and the filing of the same by the defendant's attorneys, would end the jurisdiction of the commission, and effectually destroy a substantial right of the railroad company to be heard.

In view of what is above stated, it is quite apparent that the order directing the peremptory mandamus to issue was made upon a misapprehension of the facts of the case, and of the legal relation of the commissioners to the proceeding in which they were appointed. There had been no official or effective irrevocable decision made by the commissioners in June, 1900. It is true that one of them had announced certain sums as awards to be made to the relator, but that announcement was in no way conclusive, and did not constitute a decision beyond the power of recall. It is required by the statute that a decision shall be made in a report by the commissioners which is their ultimate act, and until that act is performed the proceeding is still open before them. The general rule is well stated in Lewis, Em. Dom. § 423:

"Commissioners, as a general rule, have complete authority over their report until it has been filed or otherwise placed beyond their control. Although they have once resolved to report adversely to an improvement, they may afterwards report in favor of it."

The report of the commissioners had not passed beyond their control when it was signed only by two of them, and then delivered to one of the attorneys for the property owners. Inasmuch as the notification given was that the awards were unanimously made, it was contemplated that the report should be signed by three commissioners, and therefore the case does not present the feature of there being two assenting commissioners and one dissenting, which would authorize the delivery and filing of the report signed by the two concurring commissioners. The simple question on this branch of the case is whether the judicial duties of the commissioners had ceased before the signing of a report. It is not to be disputed that the functions of the commissioners in condemnation proceedings are judicial. That is a proposition which no one would dispute. Those judicial functions include the making and signing of a formal report by the commissioners, and its passing, by delivery or filing, beyond their control. The learned judge who granted the order appealed from seems to have proceeded upon the theory that the signing of the report was only a ministerial act, very much like the signing of a postea in a common-law judgment. On the contrary, it is to be likened, rather, to the report of a referee on the trial of an action, or the decision of a judge made in the short form now authorized by the Code of Civil Procedure. The effect of a mandamus in this case would be to compel this commissioner to de-

cide a particular case before him in a particular way, and that is beyond the power of the court to do.

The order appealed from must be reversed, with $10 costs and disbursements, and the motion for a mandamus denied, with $10 costs. All concur.